UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO A. VENTURA,<br><br>             Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | Case No. 1:23-cv-01185-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 12). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

Plaintiff presents the following issues:

1. Whether [t]he ALJ erred in failing to articulate whether the established vestibular dysfunction is a severe impairment.

2. Whether the ALJ erred when he ignored altogether the opinions of treating sources Eric Morgan and Mark Stecker.

(ECF No. 12, p. 3).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

## I. ANALYSIS

### A. Step Two and Plaintiff's subjective complaints

Plaintiff's first issue raises a two-part challenge to the ALJ's decision, arguing that (1) the ALJ should have found his vestibular dysfunction to be severe at Step Two; and (2) the ALJ failed to "articulate any rationale for dismissing Plaintiff's subjective complaints relative to the vestibular dysfunction." (ECF No. 12, pp. 14, 16).

Beginning with the first part of Plaintiff's argument, the Ninth Circuit has provided the following guidance regarding whether medically determinable impairments are severe under Step Two:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985).

At Step Two, the ALJ found that Plaintiff "had the following severe impairments: bilateral carpal tunnel syndrome, coronary artery disease, and lumbar and cervical degenerative disc disease." (A.R. 30). Plaintiff contends that the ALJ failed to consider his vestibular dysfunction, which he alleged causes him severe dizziness, at Step Two and should have included it among his severe impairments, noting that a State agency physician listed it as a severe impairment. (ECF No. 12, p. 14, citing A.R. 74 (listing "Vertiginous Syndromes and Other Disorders of Vestibular System"). Defendant responds that "Plaintiff has not identified harmful error" because "[t]he ALJ discussed Plaintiff's dizziness later in the decision, curing any error." (ECF No. 16, p. 7).

Because Defendant offers no defense to the ALJ's decision to not include vestibular dysfunction as a severe impairment at Step Two, the Court considers whether the ALJ properly accounted for Plaintiff's symptoms in connection with the RFC. *See Lewis v. Astrue*, 498 F.3d

909, 911 (9th Cir. 2007) (noting that any error in failing to find an impairment severe at Step Two is harmless where the ALJ considers the limitations posed by the impairment in the Step Four analysis).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

The ALJ formulated the following RFC:

> After careful consideration of the entire record, I find that since June 7, 2020, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, and scaffolds, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, frequently handle, finger, and operate hand controls bilaterally, must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation, and must avoid even moderate exposure to hazards such as operational control of moving machinery and exposure to unprotected heights.

(A.R. 31).

Plaintiff argues that this RFC is deficient because the ALJ failed to account for his subjective complaints, *i.e.*, that he experiences four to five dizzy spells each day and needs to lie down for about thirty minutes until he feels better. (ECF No. 12, p. 18). Defendant argues that the

ALJ properly discounted the degree of Plaintiff's subjective complaints and otherwise accounted for his dizziness symptoms in formulating the RFC. (ECF No. 16, pp. 6-9).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 32). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

In formulating the RFC, the ALJ noted Plaintiff's subjective complaints about dizziness but discounted their degree of severity:

> The claimant testified at the hearing as follows: The claimant alleged he is unable to work because of bilateral carpal tunnel symptoms, worse on the right, a history

> of two heart attacks, and chronic dizziness. He stated he lost his last job because after losing his commercial driver's license because of dizziness and medication side effects. He claimed his dizzy spells occur four to five times daily, occur suddenly, and last for 10 to 15 minutes each. . . . (Hearing).
>
> While the claimant reported losing his commercial driver's license because of dizziness and medication side effects, and while he has endorsed occasional episodes of dizziness since his alleged onset date, he acknowledged he continues to drive his personal vehicle. (Hearing; Ex. 1F/10; Ex. 2F/8, 15).
>
> While he testified to multiple episodes of dizziness per day, each lasting up to 15 minutes, that testimony is not consistent with the record, where an October 8, 2020 record documented him as reporting one episode of dizziness per week, lasting for three minutes. (Ex. 2F/15). A neurological evaluation performed at that visit was normal. (Ex. 2F/16).
>
> At a March 2, 2021 return visit, he stated he did not appear because he had no transportation. While he reported "some" dizziness at that visit, he denied shortness of breath. (Ex. 2F/7, 8). A neurological examination was again unremarkable. (Ex. 2F/8).
>
> The claimant asked about permanent disability, but his provider explained his skepticism given the absence of significant objective test or examination findings. (Ex. 2F/5, 6). A neurological examination performed during a September 24, 2021 neurology visit was again unremarkable. (Ex. 5F/24, 25). The claimant again asked about a statement in support of his disability application, and the best his provider could offer was a general statement that the claimant has subjective pain and dizziness that impair his ability to work, which he provided a few days later. (Ex. 5F; Ex. 7F).
>
> The claimant denied cardiovascular symptoms, shortness of breath, musculoskeletal pain and reduced range of motion, and dizziness at a February 22, 2022 cardiology visit. (Ex. 9F/12). A physical examination was unremarkable. (Ex. 9F/12, 13).

(A.R. 32-34).[1]

Such discussion shows that the ALJ considered Plaintiff's complaints about his dizziness in formulating the RFC but ultimately did not find it to cause disabling symptoms, generally because there was a lack of objective medical support for Plaintiff's complaints and because his daily activities, own statements, and the medical record were inconsistent with his complaints. Such reasoning is valid.

First, even though the lack of supporting evidence cannot be the sole basis to discount

---

[1] For readability, the Court has omitted less relevant portions of the ALJ's opinion without indicating where each omission occurs.

testimony, it can be a factor. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Moreover, the ALJ properly relied on evidence inconsistent with disability to discount Plaintiff's complaints, *e.g.*, his daily activities and normal medical examinations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting that a conflict between daily activities and medical opinion may justify discounting medical opinion); *Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Additionally, the Court notes that a State Agency physician, Dr. Amado, considered Plaintiff's vestibular disorder but opined that Plaintiff was not disabled and was capable of light work. (A.R. 74, 80-81). The ALJ found this opinion to be "partially persuasive," noting that "[w]hile not disabling, the claimant's [symptoms, including] . . . multiple reports of episodic dizziness, limit him to light work with postural, environmental, and right upper extremity manipulative limitations." (A.R. 35). However, the ALJ added even further limitations in the RFC concerning Plaintiff's left upper extremity, which are not at issue here.

In short, because the ALJ properly considered Plaintiff's complaints about his vestibular-disorder, in addition to all the record evidence, in formulating the RFC, any error at Step Two was harmless.

**B.     Medical Opinion**

Plaintiff argues that the ALJ erred by failing to articulate how the ALJ considered two purported medical opinions. (ECF No. 12, p. 19). The first is from Physician Assistant, Eric Morgan who wrote a letter stating that Plaintiff has "chronic dizziness" and "[i]t is my opinion that he not continue to drive a bus for a living as his frequent dizziness and presyncope would endanger himself and other passengers. I also recommend that he no[t] be subjected to frequent heavy lifting or overly strenuous activities given his cardiac history." (A.R. 606). The second is from Dr. Mark Stecker, who wrote a letter, stating that "I am the neurologist taking care of Marco Ventura because of pain in his hands and feet. He gets dizzy during the day. This has interfered

with his ability to do useful work. We are pending additional testing." (A.R. 603).

Defendant responds that "[i]t is unclear whether either of these statements constituted medical opinions the ALJ was required to explicitly consider," citing 20 C.F.R. § 404.1513(a)(2), which defines a medical opinion as follows: "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." (ECF No. 16, p. 9). However, Defendant argues that, assuming that either statement constitutes a medical opinion, "the ALJ committed, at most, harmless error by not discussing their persuasiveness" "because Plaintiff has not identified how the decision failed to account for the limitations contained in the purported opinions." (*Id.* at 10); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (noting that "harmless error applies in the Social Security context").

Because Plaintiff applied for benefits in 2021, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (A.R. 15). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the

> special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

With the above standards in mind, it is not clear that the two letters at issue constitute medical opinions under the regulations such that the ALJ was even required to articulate his consideration of supportability and consistency factors. However, the Court need not reach this issue because the Court finds that any error is harmless.

The Court begins with the letter from Physician Assistant Morgan, who opined that Plaintiff cannot "continue to drive a bus for a living" because of his dizziness and also recommended that he not be required to frequently lift heavy objects. (A.R. 606). Defendant argues that any error in the ALJ's failure to discuss this letter is harmless because (1) the ALJ found Plaintiff incapable of performing his past work as a bus driver and (2) limited him to light work, which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

The Court agrees with Defendant because Plaintiff articulates no harmful error in light of the fact that the ALJ did not find Plaintiff capable of his past work as a driver (A.R. 36), as Morgan recommended, and did not find Plaintiff capable of frequently lifting heavy objects, as

Morgan recommended. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (noting that the burden of showing that an error was harmful normally belongs to the party attacking an agency's decision). Rather, the ALJ found Plaintiff capable of mail clerk (DOT 209.687-026), marker (DOT 209.587-034), and office helper (DOT 239.567-010) occupations, none of which require driving or frequent heavy lifting. (A.R. 37).

Turning to Dr. Stecker's letter, he stated that Plaintiff "gets dizzy during the day" and that this "has interfered with his ability to do useful work." (A.R. 603). Defendant argues that the ALJ properly accounted for Plaintiff's dizziness in the RFC. (ECF No. 16, p. 10). The Court agrees. As noted above, the ALJ properly discounted the degree of dizziness that Plaintiff alleged and otherwise formulated a RFC, in part based on reliance on the opinion from Dr. Amado, that accounted for Plaintiff's dizziness in determining that he was not disabled.

Accordingly, the Court concludes that, because Plaintiff has not shown that the ALJ's failure to properly consider the letters from Physician Assistant Morgan or Dr. Stecker would have ultimately affected the disability determination, any error on this issue was harmless.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **February 22, 2024**            /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE

9